GEGNER, APPELLEE, *v.* GRAHAM, APPELLANT, ET AL.

[Cite as Gegner v. Graham, 1 Ohio App. 2d 442.]

(No. 639—Decided January 3, 1964.)

*Mr. Harry W. Kyle,* for appellee.

*Messrs. Sindell, Sindell, Bourne, Markus & McElroy,* for appellant.

CRAWFORD, J.  This is an appeal on questions of law taken by Paul N. Graham from a judgment of the Court of Common Pleas finding Section 4112.02, Revised Code, to be unconstitutional as applied to plaintiff, appellee herein, and a cease and desist order of the commission to be a nullity and void.

The Ohio Civil Rights Commission approved findings and recommendations of its hearing examiner that the plaintiff, Lewis E. Gegner, proprietor of a barbershop, refused to cut the hair of defendant, appellant herein, Paul N. Graham, for the sole reason that Graham is a Negro, in violation of Section 4112.02 (G), Revised Code.

The final entry of the Common Pleas Court makes no reference to the sufficiency of the evidence to support these findings.  There is substantial evidence in the record to support them, and they will be accepted as conclusive.  Section 4112.06 (E), Revised Code.

The sole ground of the ruling in the Common Pleas Court was the unconstitutionality of Section 4112.02, Revised Code. Plaintiff claims that the statute deprives him of his constitutional rights, notably his rights under the Ohio Constitution, Sections 1 and 19, Article 1, and the United States Constitution, Amendments V and XIV.  The argument appears to be that plaintiff has been a barber for a period of thirty or thirty-five years, that to cut Negro hair would require him to develop new skills, and that this would be burdensome and inconvenient and would result in the closing of his shop.

The policy of legislation is for the Legislature to determine. The court is confined to the single issue whether the Legislature had the power, under the Constitution, to pass the law in question.

There is always a strong presumption that a statute is constitutional.  It is the duty of the court to resolve every reasonable doubt in favor of validity.  See 10 Ohio Jurisprudence 2d 245, Constitutional Law, Section 165, and cases cited.

The statute (Section 4112.02(G), Revised Code), provides that:

"It shall be an unlawful discriminatory practice:

"* * *

"(G) For any proprietor or his employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, national origin, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges thereof."

The immediately preceding Section declares a barbershop to be a place of public accommodation. Section 4112.01(I), Revised Code.

It is too well settled for argument that the Legislature is fully empowered to legislate against racial discrimination in places of public accommodation. However, it is strenuously argued that a barbershop is not such a place. In the absence of a statutory declaration on the subject, the question might be debatable. In the construction of the related penal Section 2901.35, Revised Code, various courts have held in the past that even retail stores and soda fountains were not places of public accommodation and amusement before the section was amended to include them specifically. (See notations to that Section.)

But after the Legislature has made a classification, we may not set it aside unless it is arbitrary and unreasonable. If based upon a real and substantial distinction, the classification is valid. 10 Ohio Jurisprudence 2d 708, 710, Constitutional Law, Sections 655, 656. We believe the present classification is reasonable and valid.

The real question, of course, is not the name of the classification, but whether, in fact, barbershops constitute a business or occupation affected with a public interest or devoted to a public use so as to render them subject to regulations under the police power. 10 Ohio Jurisprudence 2d 483, 484, Constitutional Law, Sections 403, 404.

When an owner or proprietor opens up his property or business for use by the public, he subjects it and himself to certain rights in his clients or customers.

Ordinarily, the law does not undertake to govern or regulate a citizen in the conduct of his strictly private business. In matters of mere private concern, he is free to deal with whom he pleases. However, there are certain classes of business in

the management and conduct of which the general public also has an interest. The plaintiff carries on his business under a license granted him by the state. He has secured to him by the law certain privileges and rights which are not enjoyed by members of the public generally. The power which granted the license represented each member of the public in making the grant, and each member, with reference to those privileges which accrue to the public under it, must be on an equality with every other member. Undoubtedly, the plaintiff can establish reasonable rules and regulations for the conduct of his business. He may also limit his practice to the skill he possesses so long as he does so for reasons applicable alike to all persons regardless of race, color, religion, national origin or ancestry. But when he accepts the privileges afforded by a public license, he must also accept the obligation to treat all members of the granting authority alike. Thereafter, he may not refuse to serve any citizen for any reason which is not applicable alike to all citizens.

The Legislature has heretofore provided careful supervision over barbers in the interests of public health, safety and welfare. Chapter 4709, Revised Code. The Board of Barber Examiners is required to prescribe sanitary requirements subject to the approval of the Department of Health. This is a valid exercise of police power in the interest of public health, safety and welfare. A similar law was upheld in *Messenger* v. *State,* 25 Neb. 674, 41 N. W. 638.

Plaintiff contends that while these regulations have raised the art of barbering to the status of a profession, it alone among the professions is singled out for regulation by Section 4112.02, Revised Code, so that barbers are thereby denied the equal protection of the laws because of lack of uniformity in the operation of the law throughout the state.

The statute refers to all barbershops indiscriminately. All such businesses, being closely related to the public health, safety and welfare and devoted to a public use, are subject to the control of the state for the public good. 10 Ohio Jurisprudence 2d 483, 484, Constitutional Law, Sections 403, 404.

The mere fact that the Legislature operates only upon one class of persons or the members of one occupation or profession does not validate the argument that the law lacks uniformity

in its operation throughout the state. 10 Ohio Jurisprudence 2d 708, Constitutional Law, Section 655.

If barbers were free to turn away Negroes because of their race, then this group would be denied the safeguards to health provided by law and be denied on their part the equal protection of the laws.

The plaintiff is not deprived of his property or the use thereof or of the practice of barbering. The law does not require him to develop new skills. It merely provides that he must not deny the services of his shop to any person because of race. He is free to develop any specialties he may choose. If a particular customer does not come within one of his specialties, he can and probably should tell him so. But the law provides that he may not refuse to serve him because of his race.

Neither does the law require Gegner or any other barber to serve every person who presents himself. It specifically reserves such right to refuse service. It provides simply that no person shall be denied service "except for reasons applicable alike to all persons regardless of race, color, religion, national origin, or ancestry."

He will not be deprived of his property or the continued use of it, nor of the practice of his profession, except by his own choice. If he finds the situation inconvenient, we would emphasize a provision of one of the constitutional safeguards which he invokes: "Private property shall ever be held inviolate, *but subservient to the public welfare.*" (Emphasis added.) Section 19, Article I, Ohio Constitution. None of his property is actually taken, and none need be compensated for.

We find no constitutional right in the plaintiff, which is being violated. But unless the cease and desist order of the Ohio Civil Rights Commission is enforced the rights of others will be denied.

We are here dealing with a question of constitutional law. We have declared the principle which we believe applies. That being established, we apprehend that it will provoke no economic or professional convulsion. Barbers and customers will continue to deal together on the basis of personal preference. But the *right* of any member of the public not to be discriminated against because of race must be upheld.

The judgment of the Court of Common Pleas will be, and

hereby is, reversed, and the order of the Ohio Civil Rights Commission, that the plaintiff, Lewis C. Gegner, cease and desist from his unlawful and discriminatory practices, will be, and hereby is, made final, and the cause is remanded to the Court of Common Pleas to carry this judgment into effect.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.