RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0203P (6th Cir.)
File Name: 04a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DANA R. DERUNGS; DEVIN
DERUNGS, a minor; JENNIFER
GORE; AUSTIN GORE, a
minor; ANGIE BAIRD;
KASSIDEE BAIRD, a minor,
*Plaintiffs-Appellants,*

v.

WAL-MART STORES, INC.,
*Defendant-Appellee.*

No. 01-3498

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 99-00190—Walter H. Rice, District Judge.

Argued: August 5, 2003

Decided and Filed: June 30, 2004

Before: BOGGS, Chief Judge; RYAN, Circuit Judge;
ROSEN, District Judge.[*]

_____

[*] The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Susan M. Brasier, FALKE & DUNPHY, Dayton,
Ohio, for Appellants. Gregory S. Muzingo, Bentonville,
Arizona, for Appellee. **ON BRIEF:** Susan M. Brasier,
FALKE & DUNPHY, Dayton, Ohio, for Appellants. Carolyn
K. Seymour, Bradley A. Sherman, DUVIN, CAHN &
HUTTON, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

ROSEN, District Judge.

## I.  *INTRODUCTION*

Plaintiffs/Appellants Dana Derungs, Jennifer Gore and
Angie Baird appeal the district court's grant of summary
judgment in favor of Defendant/Appellee Wal-Mart Stores,
Inc. ("Wal-Mart"), on their claim that Wal-Mart discriminated
against them on the basis of their sex in violation of the Ohio
Public Accommodation statute, Ohio Revised Code
§ 4112.02(G), by requiring them to breast-feed their children
in a restroom or to leave the store to do so. Because we find
that under the specific provisions and legislative history of the
Ohio Public Accommodation statute, restrictions on breast-
feeding do not amount to discrimination based on sex, we
affirm the district court's judgment.

## II.  *PERTINENT FACTS*

On April 7, 1997, Plaintiff Dana Derungs was shopping at
the Wal-Mart store located in Lebanon, Ohio. She attempted
to nurse her son, Devin Derungs, on a bench next to a
dressing room. She was prohibited from doing so by a Wal-
Mart employee and told that she had the option of breast-

feeding her son either in the restroom or outside the store. In response, Ms. Derungs left the store with her son.

Plaintiff Jennifer Gore had a similar experience in another Wal-Mart store. On November 8, 1997, Ms. Gore was waiting in a lay-a-way line at a Wal-Mart store in Trotwood, Ohio with her son, Austin Gore. She started to breast-feed Austin but was interrupted by a Wal-Mart employee who told her she was not permitted to breast-feed her son in the store. The employee informed Ms. Gore that she could breast-feed her son in the restroom, or she could leave the store. She voluntarily left the store with her son.

Plaintiff Angie Baird also attempted to breast-feed her child in the Trotwood, Ohio Wal-Mart store. On February 18, 1999, Ms. Baird attempted to breast-feed her daughter, Kassidee Baird, on a bench near the portrait studio in the Trotwood Wal-Mart store. Like her co-plaintiffs, Ms. Baird was interrupted by a store employee and informed that she could either breast-feed in the restroom or had to leave the store. She, too, elected to leave the store with her child.

On March 31, 1999, Dana Derungs, Devin Derungs, Jennifer Gore and Austin Gore filed a complaint in Ohio state court alleging that in refusing to permit Ms. Derungs and Ms. Gore to breast-feed their children, Wal-Mart discriminated against them on the basis of sex and age under Ohio Revised Code § 4112.02(G). Plaintiffs also alleged three common-law claims in their complaint: tortious infliction of emotional distress, tortious interference with parental rights, and loss of consortium. On April 19, 1999, the complaint was amended to add Angie Baird and her infant daughter, Kassidee Baird, as party-plaintiffs. Wal-Mart timely removed the action to the United States District Court for the Southern District of Ohio on May 3, 1999 on diversity of citizenship grounds.

On September 26, 2000, the district court granted Wal-Mart's Motion for Partial Summary Judgment and dismissed Plaintiffs' statutory claims. *See Derungs v. Wal-Mart Stores,*

*Inc.*, 141 F. Supp. 2d 884 (S.D. Ohio 2000). Then, on March 15, 2001, Wal-Mart's Motion for Summary Judgment on the remaining common-law claims was granted, and a Final Judgment was entered on April 11, 2001. Plaintiffs timely filed a Notice of Appeal.[1]

### III. *DISCUSSION*

### A. *STANDARD OF REVIEW*

The standard of review applicable to the district court's decision to grant Defendant's Motion for Summary Judgment is *de novo. Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001); *see also Peters v. Lincoln Electric Co.*, 285 F.3d 456, 465 (6th Cir. 2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 871 (6th Cir. 1997), *cert. denied*, 522 U.S. 1110 (1998); Fed. R. Civ. P. 56(c). In the present case, there is no dispute that Wal-Mart employees, while in the course of their employment, denied the Plaintiffs the opportunity to breast-feed in public inside Wal-Mart stores. The question is whether this is discriminatory conduct within the meaning of Ohio Revised Code § 4112.02(G). Therefore, this is strictly an issue of statutory construction which is properly resolved

---

[1] Plaintiffs did not brief their claims of tortious infliction of emotional distress, tortious interference with parental rights, or loss of consortium. Therefore, these claims are considered waived. *See* Fed. R. App. P. 28(a)(3) and (b); *see also Ahlers v. Scheibil*, 188 F.3d 365, 374 (6th Cir. 1999); *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 (6th Cir. 1999) (en banc). In their Reply Brief, Plaintiffs affirmatively stated that they were voluntarily withdrawing their claim for age discrimination and appeal only their sex discrimination claim. *See* Final Reply Brief of Appellants, p. 12.

by summary judgment. *Royal Geropsychiatric Services, Inc. v. Thompkins*, 159 F.3d 238 (6th Cir. 1998).

## B.  THE DISTRICT COURT'S RULING

The district court determined that the thrust of the Ohio Public Accommodation statute is the comparability of treatment.  Finding no federal or Ohio state court decisions addressing the issue of whether a prohibition against breast-feeding in a place of public accommodation constitutes sex discrimination under Ohio Revised Code § 4112.02(G), the court looked to federal cases involving the issue of breast-feeding which addressed this issue in the context of the sex discrimination prohibition in Title VII.  The court discerned from these cases that

Title VII forbids gender discrimination in employment, but gender discrimination by definition consists of favoring men while disadvantaging women *or vice versa*. The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII.

141 F. Supp. 2d at 890 (quoting *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305, 309 (S.D.N.Y. 1999)) (emphasis in original).

The lower court also determined that even if analyzed as a "sex-plus" case, Plaintiffs failed to make out a *prima facie* claim of sex discrimination.  *Id.* The court explained the Title VII approach to "sex-plus" claims:

"[S]ex-plus" discrimination. . . exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic. . . .

. . . [I]n a "sex-plus" or "gender-plus" case, the protected class need not include all women [but] the

plaintiff must still prove that the subclass of women was unfavorably treated *as compared to the corresponding subclass of men*.  Absent such a subclass, a plaintiff cannot establish sex discrimination.

141 F. Supp. at 890-91 (citations omitted; emphasis in original).

After reviewing the language of Section 4112.02(G) and the pertinent federal precedents, and finding no principled basis for distinguishing Ohio's prohibition on the basis of sex by places of public accommodation from the Title VII analysis set forth above, the court concluded:

[D]rawing distinctions among women. . . on the basis of their participation in breast-feeding activity, simply is not the same as drawing distinctions between men and women. . . . A prohibition against breast-feeding merely divides people into two groups: (1) women who breast-feed. . . ; and (2) individuals who do not breast-feed. . . . As noted above, although the first group includes exclusively women. . . the second group includes members of both sexes. . . .  If anything, such classifications establish "breast-feeding discrimination," which. . . is not discrimination on the basis of sex under the law.

*Id.* at 893.

Plaintiffs argue that the district court erred in applying a Title VII analysis and argue here, as they did before the lower court, that the Public Accommodation statute is broader than those provisions of the Ohio Civil Rights law prohibiting employment discrimination, which they concede, are analogous to Title VII.  They claim that Section 4112.02(G) does not require a showing that Wal-Mart discriminates against all women.  It is enough, they argue, to show that Wal-Mart denies *some* women (i.e., women who wish to

engage in breast-feeding) the full use and enjoyment of its facilities.

## C.   *OHIO'S TEST FOR SEX DISCRIMINATION UNDER § 4112.02(G)*

As an initial matter, we note, as did the district court, that this case presents an issue of first impression, i.e., does a prohibition against breast-feeding in a place of public accommodation constitute unlawful discrimination under Ohio law.  Plaintiffs here argue that the prohibition against sex discrimination in the Ohio Public Accommodation statute, Ohio Rev. Code § 4112.02(G), should be construed so as to render breast-feeding by a woman a protected activity under the statute.

§ 4112.02(G) of the Ohio Revised Code prohibits discrimination in places of public accommodation:

It shall be an unlawful discriminatory practice:

For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, disability, age or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev. Code § 4112.(G).

"Place of public accommodation" is defined in § 4112.01(9) as

any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, *other place for the sale of merchandise*, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public.

Ohio Rev. Code § 4112.01(9) (emphasis added).

When a federal court interprets state law, the substantive law of the state in which the district court sits must be applied.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938); *Jim White Agency Co. v. Nissan Motor Corp. in USA*, 126 F.3d 832 (6th Cir. 1997).  If the state supreme court has spoken on the issue, its decision should be followed; if, however, the only precedent is from the state's intermediate appellate courts, the intermediate court's decision should be followed absent a strong showing that the state supreme court would act in a different manner.  *Lawler v. Fireman's Fund Ins. Co.*, 322 F.3d 900, 903 (6th Cir. 2003).

Both the Ohio State Legislature and the Ohio Supreme Court have stated that the Ohio civil rights statutes should be liberally construed.  Ohio Rev. Code § 4112.08; *Ohio Civil Rights Commission v. Lysyj*, 38 Ohio St. 2d 217, 220, 313 N.E.2d 3, 6 (1974), *superseded by statute on other grounds*, *Rice v. CertainTeed, Corp.*, 84 Ohio St. 3d 417, 704 N.E.2d 1217 (1999).  There is, however, only one Ohio Supreme Court case that has directly interpreted this particular section of Chapter 4112.  In *Lysyj*, 38 Ohio St. 2d at 217, the plaintiff was a white woman who lived in a trailer park and was visited by a black man at her trailer. She was asked that night to move out of the trailer park by the end of the month, and she subsequently sued under § 4112.02(G). The Ohio Supreme Court held that she had been discriminated against on account of her race.  In reaching this conclusion, the Ohio court explained:

When determining whether there has been unlawful discrimination under R.C. 4112.02(G), the test is simply whether the proprietor, keeper, manager, or employee of a place of public accommodation has denied to any person the full enjoyment of such place for reasons not

applicable alike to all persons irrespective of race, color, religion, national origin or ancestry.[2]

*Id*. at 221. Applying this construction of the statute, the *Lysyj* court found that the discrimination at issue in the case was based on the fact that a white resident was free to entertain white guests without reprisal, but when the guest was black, the resident was ordered to leave the trailer park. *Id*.

Lower Ohio courts have also weighed in on the meaning of Ohio's Public Accommodation statute. The first such case, *Gegner v. Graham*, 1 Ohio App. 2d 442, 205 N.E.2d 69 (1964), dealt with a black man who was refused service at a barbershop. The court interpreted the statute to be applicable to barbershops, and held that refusal to cut the hair of someone that is black solely for the reason that he is black is plainly prohibited by § 4112.02(G). The Ohio Court of Appeals was also called upon to construe the statute in *Meyers v. Hot Bagels Factory, Inc*., 131 Ohio App. 3d 82, 721 N.E.2d 1068 (1999). *Meyers* involved a woman's claim that she was verbally harassed by the owner of a bagel shop while in his store. While this decision only repeats the test for discrimination that was provided in *Lysyj*, it does offer a definition of what constitutes "full enjoyment of the accommodations, advantages, facilities, or privileges" within the meaning of § 4112.02(G):

> We believe "full enjoyment" of the accommodations, facilities, advantages, or privileges of a place of public accommodation means the right to purchase all services or products of a place of public accommodation, the right to be admitted to any place of public accommodation, and the right to have access to the services and products

---

[2] § 4112.02(G) was later amended to include sex and age. It is undisputed that the test announced in *Lysyj* is still applicable after this amendment.

of such a place in the same manner as all other customers.

*Meyers*, 131 Ohio App. 3d at 104, 721 N.E.2d at 1083.[3] Notably, in both *Meyers* and *Gegner* there was a comparable class of people (males and whites, respectively) with which to compare the plaintiffs, and the courts used a comparability analysis in determining whether or not discrimination under the Public Accommodation statute occurred.

D.  *TITLE VII AND THE OHIO PUBLIC ACCOMMODATION STATUTE*

The Ohio Supreme Court has adopted the federal courts' Title VII[4] analysis when deciding employment discrimination claims under the Ohio Civil Rights statute. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Peters v. Lincoln Electric Co*., 285 F.3d 456, 469 (6th Cir. 2002). Although the application of federal law is well settled in the context of employment discrimination, it has not been definitively settled by the Ohio courts in the context of discrimination in places of public accommodation.

Our task is complicated by the fact that the Ohio legislature used different language in constructing Section 4112.02(G) than it used in constructing the other parts of Section 4112.02. That is, the other parts of the Section are phrased in the language of Title VII in that they prohibit discrimination "on

---

[3] One other unpublished appellate case, *Love v. Ohio Civil Rights Comm'n*, 1983 WL 6548 (Ohio App. 5 Dist.), also speaks to this issue. This case, however, only describes "full enjoyment" as either denial of services or in terms of the treatment accorded. This was noted, considered, and incorporated into the definition adopted by the appellate court in *Meyers*. 131 Ohio App. 3d at 104.

[4] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e.

the basis of . . . ."  Section 4112.02(G), on the other hand, prohibits any place of public accommodation from denying to any person the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation, "except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, disability, age or ancestry."  Ohio Rev. Code § 4112.02(G). Ohio courts have not considered whether federal courts' Title VII analysis is equally applicable to Section 4112.02(G). Nevertheless, a close analysis of the statute and its history reveals the likely legislative intent with respect to this aspect of the statute.

1.    *The Supreme Court's Gilbert Decision, the Federal Pregnancy Discrimination Act, and the 1980 Amendments to the Ohio Civil Rights Statute*

In dismissing the Plaintiffs' claims in this case, the district court relied on the Supreme Court's decision in the employment discrimination case of *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S. Ct. 401 (1976), and subsequent lower federal court decisions specifically involving breast-feeding.

In *Gilbert*, the Court held that discrimination based on pregnancy was not discrimination within the meaning of Title VII.  The specific issue in *Gilbert* was whether Title VII prohibits excluding pregnancy-related disabilities from an employer's disability benefit plan.  Upon review, the Supreme Court concluded that such an exclusion did not constitute unlawful discrimination on the basis of sex.  In reaching this conclusion, the *Gilbert* Court stated that "we have here no question of excluding a disease or disability comparable in all other respects to covered diseases or disabilities and yet confined to the members of one race or sex."  *Gilbert*, 429 U.S. at 136.  The Court noted that pregnancy is confined to women, but reasoned that the disability insurance package did not discriminate against women by virtue of its exclusion of pregnancy-related disabilities from its coverage explaining:

The Plan, in effect (and for all that appears), is nothing more than an insurance package, which covers some risks but excludes others. . . . The "package" going to relevant identifiable groups we are presently concerned with -- General Electric's male and female employees -- covers exactly the same categories of risk, and is facially nondiscriminatory in the sense that there is no risk from which men are protected and women are not.  Likewise, there is no risk from which women are protected and men are not.  As there is no proof that the package is in fact worth more to men than to women, it is impossible to find any gender-based discriminatory effect in this scheme simply because women disabled as a result of pregnancy do not receive benefits. . . .

*Id.* at 138 (internal citations and footnote omitted.)

Plaintiffs here claim that the district court's reliance on the rationale of this case was specifically erroneous because *Gilbert* has been overruled by statute and subsequent Supreme Court decisions.  While the Plaintiffs are correct that the Court's holding in *Gilbert* has been overruled, they are mistaken that the comparability analysis used by the Supreme Court has been completely obliterated in all factual contexts.

In 1978, in response to the Supreme Court's decision in *Gilbert*, Congress passed the Pregnancy Discrimination Act (the "PDA"), 42 U.S.C. § 2000e(k), which effectively overruled the holding in *Gilbert*. The PDA provides that, for purposes of employment discrimination under Title VII, the phrases "because of sex" and "on the basis of sex" specifically include pregnancy, childbirth, and related medical conditions.[5]

---

[5] 42 U.S.C. § 2000e(k) provides, in pertinent part, as follows:

For purposes of this subchapter [i.e., Subchapter VI of Title VII, "Equal Employment Opportunities"] --

The first Supreme Court case that subsequently interpreted the PDA was *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 675, 103 S.Ct. 2622 (1983). In *Newport News*, the Court was faced with an employer's benefit plan that covered both employees and spouses, but gave pregnancy benefits only to female employees, and did not cover pregnancy for the (female) spouses of male employees. The Court held that Title VII mandates pregnancy benefit coverage for either both employees and spouses of employees, or neither employees nor spouses. In so doing, the Court specifically construed the Congressional history of the PDA and determined that the intent of Congress in adopting the PDA was to specifically overrule *Gilbert*. The Court found that, although congressional discussion of the PDA focused on the needs of female members of the work force rather than spouses of male employees, "[t]his d[id] not create a 'negative inference' limiting the scope of the Act to the specific problem that motivated its enactment." 462 U.S. at 679, 103 S.Ct. at 2629. Thus, the Court concluded that the Newport News benefit plan discriminated against male employees "because of their sex" because it afforded less comprehensive protection to married male employees than it afforded to married female employees.

The timing of this sequence of development of law concerning the inclusion of pregnancy discrimination within the scope of federal employment discrimination law is important in determining the Ohio Legislature's intent regarding Section 4112.02(G). Ohio adopted § 4112.02 prior

---

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 20002-2(h) of this title shall be interpreted to permit otherwise. . . .

to the passage of the Civil Rights Act of 1964. After the Supreme Court's 1976 decision in *Gilbert* and Congressional passage of the PDA in 1978, the Ohio legislature adopted § 4112.01(B) in 1980. This amendment to the definitions section of Chapter 4112 redefined the terms "because of sex" and "on the basis of sex" to incorporate the language of the PDA, yet in doing so made the new definition applicable only to § 4112.02(A) – (F), and thus not to the public accommodation section, § 4112.02(G).[6] However, when the Ohio Legislature amended the "because of sex" and "on the basis of sex" definition, *Gilbert* had not been expressly overruled by the Supreme Court. *Newport News* came three years later. But after *Newport News*, the Legislature again declined the opportunity to extend the amended "because of sex" and "on the basis of sex" definition to places of public accommodation.[7]

Having incorporated the PDA's language almost verbatim into the definitional provisions of § 4112, it is clear to us that the Ohio Legislature was aware of the meaning and rationale

---

[6] § 4112.01(B) provides, in pertinent part:

For the purposes of divisions (A) to (F) of Section 4112.02 of the Revised Code, the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . .

[7] It is not as if the Ohio Legislature has ignored the Civil Rights statute. The Ohio Legislature, in fact, has thrice amended the Civil Rights statute since adding the PDA language to the definitional section of the statute. *See* 1990 H 314 (amending provisions of the civil rights statute's provisions regarding age discrimination); *see also* 1999 H 264, eff. 3-17-00 (changing the statutory term "handicap" to "disability"); 1992 H 321, eff. 6-30-92 (adding provisions prohibiting discrimination in housing accommodations on the basis of familial status, and provisions prohibiting additional forms of housing discrimination against handicapped persons).

of *Gilbert*, as well as being aware of the PDA. The Legislature made a conscious choice to extend the definition of discrimination to include pregnancy even though there cannot be a class of similarly situated males. In making this choice, however, the Legislature extended the definition of discrimination in the employment context only. Because of the timing and language of § 4112.01(B), it appears that the Ohio Legislature purposely chose to limit the scope of protection of "pregnancy, childbirth and related medical conditions" to the employment context and not to extend that protection to places of public accommodation. It would be particularly inappropriate for this federal court to legislate additional protection in an area where the state legislature has chosen not to extend protection. Therefore, to the extent that breast-feeding may be deemed to be a pregnancy-related activity, there is no protection for such an activity under Ohio Revised Code § 4112.02(G).

E. *THE DISTRICT COURT DID NOT ERR IN USING A TITLE VII COMPARABILITY ANALYSIS IN RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

1. *Ohio Courts Apply a Comparability Analysis in Deciding Cases Brought Under Ohio Revised Code § 4112.02(G).*

The district court used a traditional Title VII disparate treatment comparability analysis in deciding that Plaintiffs had not made out any legally cognizable claim of sex discrimination. Plaintiffs claim that this was erroneous and argue here, as they did in the lower court, that the disparate treatment analysis should play no role in deciding claims under Ohio Revised Code § 4112.02(G). They argue that the statute is unique and that because it precludes discrimination "except for reasons alike to all persons" the statute is intended to be more expansive than its employment discrimination and like counterparts in sub-sections (A)-(F) of the Civil Rights Act, and, therefore, no comparability analysis is required. We cannot credit this argument.

First, contrary to the Plaintiffs' reading, the statutory language plainly requires a comparable class of people for comparison to demonstrate discrimination. For a prohibition to be permissible if it is "applicable alike to all persons," there is a linguistic necessity for a comparison. Therefore, for there to be impermissible sex discrimination, there must be one gender that is treated differently than another. Feeding infants is not something that only one parent may accomplish, and even the feeding of breast milk may be done by either parent from a bottle. Because the only restriction Wal-Mart placed on their business invitees was a prohibition on the *place and manner* of feeding that has no comparable class for comparison, Wal-Mart's prohibition does not violate the plain language of § 4112.02(G).

The second reason that the Plaintiff's expansive reading fails is that in the few Ohio cases that have dealt with this statutory language, the courts have consistently relied on a comparison analysis to demonstrate or deny discrimination. For example, in the leading case of *Ohio Civil Rights Commission v. Lysyj*, *supra*, 38 Ohio St. 2d 217, 318 N.E.2d 3, the Ohio Supreme Court found that a trailer park operator had engaged in unlawful discrimination under § 4112.02(G) by comparing the treatment afforded a white trailer park resident after she was visited by white guests to the treatment she was afforded after being visited by a black person. *Id.*, 38 Ohio St. 2d at 221, 313 N.E.2d at 6. Similarly, in *Gegner v. Graham, supra,* 1 Ohio App. 2d 442, 205 N.E.2d 69, the Ohio Court of Appeals compared the treatment of a barbershop's black customers and white customers in finding sufficient evidence of record to support the Civil Rights Commission's determination that denying a black man a haircut on account of his race was discrimination within the meaning of § 4112.02(G). *Id.,* 1 Ohio App. 2d at 446, 205 N.E.2d at 72. Finally, in *Meyers v. Hot Bagels Factory, Inc.*, *supra*, 131 Ohio App. 3d 82, 72 N.E.2d 1068, a comparison was made between male customers and female customers of the bagel shop. *Id.*, 131 Ohio App. 3d at 103, 721 N.E.2d at 1082. Furthermore, the *Meyers* court specifically construed the

statute as requiring a comparability analysis: "***The thrust of the statute [§ 4112.02(G)], by its terms, is the comparability of treatment.***" *Id*. (emphasis added). In sum, there have been no cases decided by any Ohio court which have advocated or adopted Plaintiff's interpretation that a comparison of treatment is not required in order to find discrimination under § 4112.02(G).

2. *Other "Breast-feeding Discrimination" Cases Apply a Comparability Analysis*

The necessity of a comparability analysis has been universally accepted in other breast-feeding cases in the employment context. In the leading case within the Sixth Circuit, *Wallace v. Pyro Mining Co.*, 789 F. Supp. 867 (W.D. Ky. 1990), *aff'd*, 951 F.2d 351, 1991 WL 270823 (6th Cir. 1991) (unpublished decision; text available on WESTLAW), the court considered a plaintiff's claim that she was discriminated against when her employer denied her personal leave to continue breast-feeding her child once her maternity leave was exhausted. In that case, the district court applied the analysis used by the Supreme Court in *Gilbert* and determined that the employer's denial of the plaintiff's request for personal leave to continue breast-feeding did not constitute discrimination on the basis of sex or violate the PDA explaining:

> We see no significant difference between the situation in *Gilbert* and the case here. Pyro's decision does not deny anyone personal leave on the basis of sex -- it merely removes one situation, breast-feeding, from those for which personal leave will be granted. While breast-feeding, like pregnancy, is a uniquely female attribute, excluding breast-feeding from those circumstances for which Pyro will grant personal leave is not impermissible gender discrimination, under the principles set forth in *Gilbert*.

789 F. Supp. at 869.

We specifically used a comparability analysis in our unpublished decision affirming the district court's judgment in *Wallace* ("[B]ecause Wallace fails to cite evidence showing that [her employer] treated women less favorably than men with respect to requests for leaves of absence, she does not meet her burden." 1991 WL 270823 at *2).

Furthermore, when breast-feeding has come up in employment contexts outside of the Sixth Circuit, it has also been deemed outside the bounds of sex discrimination. In *Martinez v. N.B.C., Inc.*, 49 F. Supp. 2d 305 (S.D.N.Y. 1999), the plaintiff alleged sex discrimination based on her employer's failure to provide a location for her to pump breast milk. The district court there analyzed her claim as a "sex-plus" type of discrimination,[8] utilizing the traditional *McDonnell Douglas/Burdine*[9] disparate treatment paradigm. The court ultimately granted the employer's motion for summary judgment finding that the lack of a similarly-situated class of men was fatal to the plaintiff's claim: "[I]f there is no comparable subclass of members of the opposite gender, the requisite comparison to the opposite gender is impossible." 49 F. Supp. 2d at 310. The Tenth Circuit has made a similar determination: "[G]ender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make

---

[8]"Sex-plus" discrimination exists when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second characteristic. *See e.g., Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496 (1971). Under a "sex-plus" theory of discrimination, it is impermissible to treat men characterized by some additional characteristic more or less favorably than women with the same added characteristic. *See, Fischer v. Vassar College*, 70 F.3d 1420, 1448 (2d Cir. 1995), *on reh'g en banc*, 114 F.3d 1332 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998).

[9]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981).

the requisite showing that they were treated differently from similarly situated members of the opposite gender." *Coleman v. B-G Maintenance Management*, 108 F.3d 1199, 1204 (10th Cir. 1997).

All of the above-cited cases arose pursuant to Title VII and the expansive "because of sex" and "on the basis of sex" definition PDA, which, as shown, has *not* been incorporated into Section 4112.02(G). Yet it is worth noting that, despite the application of the expansive PDA language, none of the district or appellate courts found that breast-feeding fell within the scope of gender discrimination because of the absence of a comparable class. Indeed, both *Wallace* and *Martinez* directly cite to *Gilbert* as controlling authority for their decisions even though they deal with employment cases *after* the passage of the PDA.

It is clear from the foregoing, that no judicial body thus far has been willing to take the expansive interpretive leap to include rules concerning breast-feeding within the scope of sex discrimination.

Finally, it is instructive to observe that in other cases involving discretionary leaves of absence for breast-feeding purposes, courts have uniformly held that rules relating to regulation of breast-feeding do not violate the PDA or Title VII. For example, in *Barrash v. Bowen*, 846 F.2d 927 (4th Cir. 1988), a female employee claimed that she had been discriminated against within the meaning of the PDA by being denied leave to breast-feed, and subsequently being terminated for failure to return to work. The Fourth Circuit disposed of her PDA claim in a single sentence: "Under the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), pregnancy and related conditions must be treated as illnesses only when incapacitating." *Id.* at 931. Even in cases where there was a medical necessity to breast-feed, an employer did not run afoul of the PDA when an employee was denied leave to do so. In *McNill v. New York City Dep't of Correction*, 950 F.Supp. 564 (S.D.N.Y. 1996), the Plaintiff mother was

medically required to breast-feed her child that was born with a cleft lip and palate in order for the child to survive. Despite this, the court rejected Plaintiff's PDA claim because the PDA was held to only protect medical conditions of the mother, not of the child.

The significance of these decisions lies in the fact that the PDA is meant to be more expansive in scope than the language in Ohio Revised Code § 4112.02(G), as explained above. Nevertheless, breast-feeding was still consistently found to be outside its broad coverage. If breast-feeding is not covered by the PDA, which specifically overturned *Gilbert* and widened the protective umbrella of Title VII, we find it extremely unlikely that in the context of public accommodation, which appears to still be governed by *Gilbert* under Ohio law, an Ohio court would find regulation of breast-feeding to be prohibited as sex discrimination.

## IV. *CONCLUSION*

For all of the foregoing reasons, we conclude that the district court did not err in determining that Wal-Mart's prohibition against breast-feeding in a place of public accommodation did not violate Ohio Revised Code § 4112.02(G). Accordingly, the district court's grant of summary judgment in favor of Defendant is AFFIRMED.