NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0506n.06

No. 24-1230

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 09, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| JENNIFER MICHELLE HEARD, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CITY OF HIGHLAND PARK, MICHIGAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before:  GILMAN, READLER, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Jennifer Heard and Andréa McKahan sued the City of Highland Park, a Michigan municipality, alleging that they suffered race and sex discrimination during their tenures as City police officers. The district court granted the City summary judgment, and the officers appealed. We affirm.

**BACKGROUND**[1]

Jennifer Heard, a white woman, joined the Highland Park Police Department as a police officer in 2017. She remains employed with the City in that capacity. Andréa McKahan, also a white woman, joined the Department as a police officer in 2019 and resigned in 2020. Together, they sued the City of Highland Park under 42 U.S.C. § 1983 and the Equal Protection Clause of

---

[1] We recite the facts in the light most favorable to the plaintiffs. *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 782 (6th Cir. 2024).

the Fourteenth Amendment to the U.S. Constitution, claiming that they suffered discriminatory drug testing and a hostile work environment due to their race and sex.[2]

In September 2019, the Department adopted a policy of random drug tests for its personnel. The policy defined "random" to mean that "each and every" person had "an equal chance" of being selected. Policy, R. 43-8, PageID 561. But the policy did not specify how exactly officers would be chosen. Rather, a separate company selected employees from a list encompassing "everybody" on the force. Christian Dep., R. 43-9, PageID 585. An officer who was randomly selected but refused testing would be terminated.

In December 2019, Officer Heard and another white female officer not party to this case were selected for drug testing. Officer Heard passed hers with "[f]lying colors." Heard Dep., R. 43-2, PageID 362. Shortly after, the Department rescinded the policy for violating a collective bargaining agreement. No other officer was ever tested under the policy. Officer Heard now asserts that the selection process was not truly random, but targeted at white female employees.

Separate from the drug testing, Officers Heard and McKahan allege that they suffered race- and sex-based harassment during their employment with the City. Their grievances stem mostly from conduct by their shift supervisor, Corporal Garth John. Both claim that Corporal John routinely denied them backup on dangerous runs. McKahan says that he assigned her more work than male counterparts and subjected her to "unrelenting criticism." Appellants Br. at 10. And Officer Heard points to an incident from 2018 when Corporal John refused to let her accompany a mentally unstable person in an ambulance, saying a male officer should go instead.

---

[2] In identifying the substantive rights at issue in this case, Officers Heard and McKahan point to the First, Fourth, and Fourteenth Amendments generally without any further specification. Because they don't press any claims beyond race and sex discrimination, we review their claims under the Equal Protection Clause and treat all other claims as forfeited. *See Odell v. Kalitta Air, LLC*, 107 F.4th 523, 532–33 (6th Cir. 2024).

Beyond their interactions with Corporal John, the officers claim they faced frivolous workplace investigations by various City employees, three of which apparently stemmed from citizen complaints. Officer Heard also alleges that a male supervisor organized meetups for male officers and excluded her. All of this, the officers say, was based on their race and sex.

The officers brought this suit against the City only. Following discovery, the City moved for summary judgment, and the district court granted the motion. The district court held that Officer Heard lacked evidence to raise a genuine dispute over whether she was drug tested for discriminatory reasons. It also ruled that both officers failed to raise a genuine dispute over whether the City had a policy or custom of workplace harassment. This appeal followed.

## ANALYSIS

We review a district court's grant of summary judgment de novo. *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008). A defendant is entitled to summary judgment when, viewing the evidence in the light most favorable to the plaintiff, there are no genuine disputes of material fact, and the defendant is entitled to judgment as a matter of law. *See id.* at 593–94. Summary judgment is not appropriate when the plaintiff sets forth "specific facts" that would allow a reasonable jury to find in the plaintiff's favor. *Id.* at 593 (citation omitted).

Because Officers Heard and McKahan sue only the City, our analysis is more demanding than in suits against individual officials. Under § 1983, a municipality is not vicariously liable for its agents' constitutional torts. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–93 (1978). For liability to attach, the City itself must have caused the injury through deliberate conduct. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Accordingly, in suits against municipalities, plaintiffs must show two things: *first*, that they suffered an underlying constitutional violation, and *second*, that the violation was the result of a municipal "policy or custom." *Powers v. Hamilton*

*Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 694). Against this framework, we now turn to the officers' discriminatory drug testing and hostile work environment claims.

## I.    Discriminatory Drug Testing

We first consider Officer Heard's claim that the City subjected her to drug testing based on her race and sex. Officer Heard does not contend that the City's policy was facially discriminatory. Instead, she alleges that the City applied it to her in a non-random and discriminatory way. The City responds—and the district court agreed—that Officer Heard lacks evidence creating a material question of whether she was targeted for unlawful reasons. We agree.

As explained, Officer Heard must present evidence that she suffered discrimination and that the discrimination resulted from a City policy. We review § 1983 discrimination claims brought under the Equal Protection Clause using the same approach as Title VII claims. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). To survive summary judgment, Officer Heard must introduce evidence that she would not have been selected for drug testing but for her status as a white woman. *See Bostock v. Clayton County*, 590 U.S. 644, 655–56 (2020). And because she does not challenge the City's policy on its face, Officer Heard must also present evidence that the discrimination she suffered resulted from an unwritten municipal policy. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Officer Heard has failed to present any such evidence. For example, she asserts that during a two-year period, she and another white female officer were the only ones tested, so the City must have targeted them individually. But she has no support for the assertion that the policy existed for two years. Quite the opposite. She admits that the policy was adopted "about the same time" she was tested in December 2019. Heard Dep., R. 43-2, PageID 360. And she also insists that after she

was tested, the City "abruptly" rescinded the policy, contradicting her own position that the policy of drug testing police officers existed for two years. Appellants Br. at 21. Officer Heard also argues that out of the Department's 117 employees, only three were white women. These numbers, her theory goes, make it statistically improbable that two white female officers would be the only people randomly selected. Yet Officer Heard points to no evidence of the Department's employment figures or demographic composition. And the only evidence that we find in the record indicates that, at the time, the Department had far fewer employees than the 117 she claims.

Our duty to construe the record in Officer Heard's favor does not mean we can accept factually unsupported assertions. *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). And Officer Heard's claim that she was drug tested for discriminatory reasons is based on speculation and factual assertions that lack support in the record. Her claim thus fails.

## II.     Hostile Work Environment

Turning to the next claim, Officers Heard and McKahan allege that a series of workplace incidents created a hostile work environment for them. And they claim that the City's inaction in the face of those incidents contributed to that environment, rendering the City liable. The City contends that the evidence falls short of establishing a genuine dispute over municipal liability. We again agree with the City.

To prevail on their theory of municipal inaction, the officers must show that their injury resulted from the City's deliberate indifference to a pattern of unlawful harassment by City employees. *Arendale*, 519 F.3d at 599–600. They cannot rely merely on "a collection of sloppy, or even reckless, oversights." *Id.* at 600 (citation omitted). Rather, they must show that the City consciously failed to act when faced with its employees' "egregious and obviously unconstitutional conduct." *Id.* (citation omitted). On this record, they fall short.

Most fundamentally, Officers Heard and McKahan fail to tie most of their alleged mistreatment to race- or sex-based harassment. *See Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 685 (6th Cir. 2024). For example, they claim that Corporal John ignored white female officers' requests for backup, but they also insist that he slept on the job, which made him generally unresponsive. They say that Corporal John treated them harshly, but they acknowledge that he had "moods" and behaved similarly toward others. Heard Dep., R. 43-2, PageID 370–71. They also claim that they were frivolously investigated, but they have no evidence that they were investigated for conduct that other officers were not investigated for.[3] In short, the officers fail to distinguish their treatment from that of other employees. What they offer is their own "subjective opinion" that they experienced discrimination, but such conclusory assertions do not suffice at this stage. *Arendale*, 519 F.3d at 601.

The only record-supported instance of discrimination identified by the officers occurred nearly four years before they filed suit. In that incident, Corporal John told Officer Heard she could not accompany a mentally unstable person in an ambulance because he wanted a male officer to go instead. But a four-year-old example involving a low-level employee does not amount to a pattern of discrimination, as required for municipal liability. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion). And rather than ignore this conduct, the City responded to it by reprimanding Corporal John and requiring him to undergo training. That course of action does not indicate deliberate indifference by the City.

---

[3] The only comparative argument the officers have is that, in one instance, Officer Heard was investigated for her handling of a reported rape, while two Black male officers involved in the same incident faced no scrutiny. But one of those officers testified that he was in fact investigated. And Officer Heard does not have any evidence or personal knowledge to dispute that fact. *See DePalma v. Sec'y of the Air Force*, 754 F. App'x 321, 328 (6th Cir. 2018).

Officers Heard and McKahan have thus failed to present evidence of a pattern of unlawful harassment by City employees, let alone that the City consciously ignored such conduct. Their hostile work environment claim cannot proceed.[4]

**CONCLUSION**

We therefore affirm the district court's grant of summary judgment to the City.

---

[4] We note that the officers do not clearly articulate whether they claim discrimination based on race, sex, or *both* under a "sex-plus" theory. *See, e.g.*, *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 431–32 (6th Cir. 2004). No matter, because they have not presented evidence that could support any of those theories.