Dana R. DERUNGS, et al., Plaintiffs,

v.

WAL-MART STORES, INC.,
et al., Defendants.

No. C-3-99-190.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 26, 2000.

Robert N. Stein, Cleveland, OH, Susan M. Brasier, Dayton, OH, for Plaintiffs.

Thomas L. Czechowski, Dayton, OH, Bryan W. Riley, Gregory S. Muzingo, Bentonville, AR, for Defendants.

## DECISION AND ENTRY SUSTAINING MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #12) FILED BY DEFENDANT WAL-MART STORES, INC.

RICE, Chief Judge.

■ Three mothers and their infant children bring this action against Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), and five John Doe employees, alleging, *inter alia*, sex and age discrimination in violation of Ohio Revised Code § 4112.02(G), which prohibits discrimination by places of public accommodation. The Plaintiffs are Dana Derungs and her infant son, Devin Derungs; Jennifer Gore and her infant son, Austin Gore; and Angie Baird and her infant daughter, Kassidee Baird.[1] The Plaintiffs allege that Wal-Mart violated § 4112.02(G) by interrupting their breast-feeding activities and by asking them either to leave the store or to breast-feed in a restroom.[2] As a result of Wal-Mart's refusal to allow them to breast-feed in public areas of the store, the Plaintiffs filed a six-count Complaint in state court on March 31, 1999. (Doc. #1 at Exh. A). Thereafter, on April 19, 1999, the Plaintiffs filed an amended Complaint in state court, adding a seventh count. (*Id.* at Exh. B). Wal-Mart removed the action to this Court on May 3, 1999, on the basis of diversity of citizenship.[3] Pending before the Court is a Motion for Partial Summary Judgment

---

1. In their amended Complaint, the Plaintiffs identify Angie Baird's daughter as "Kassidee Baird." In their Memorandum opposing summary judgment, however, they identify her as "Kassidy Baird." For present purposes, the Court will use the spelling set forth in the amended Complaint.

2. Given that the "John Doe" Defendants have not yet been named in the Plaintiffs' amended Complaint, the Court will treat this action as one against only Wal-Mart.

3. Wal-Mart was not served with a Summons and Complaint until April 7, 1999. Consequently, its removal was timely under 28 U.S.C. § 1446(b), which provides:

    The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter....

    In addition, the Court notes that diversity jurisdiction exists because the Plaintiffs are all citizens of Ohio, and Wal-Mart is a citizen of Arkansas, with its principal place of business and place of incorporation in that state. Although it is extremely likely that the five John Doe Defendants are citizens of Ohio, given that they work in Dayton-area Wal-Mart stores, they remain unidentified in the Plaintiffs' amended Complaint. It is well settled that the citizenship of John or Jane Doe defendants is disregarded for purposes of determining diversity. *See, e.g., Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 948 (6th Cir.1994) (holding that a personnel manager identified as "Jane Doe" was not a defendant whose citizenship would be considered in determining whether a federal court

(Doc. #12) filed by Wal-Mart.[4]

## I. *Factual Background*

For purposes of its present Motion for Summary Judgment, Wal-Mart does not dispute the material facts underlying this litigation. On April 7, 1997, Dana Derungs attempted to breast-feed her eleven-week-old son, Devin, on a bench next to a dressing room at a Wal-Mart store in Lebanon, Ohio. A store employee prohibited her from doing so. The employee told Dana Derungs that she could either breast-feed in the restroom or leave the store. In response, Dana Derungs left the store with her son. On November 8, 1997, Jennifer Gore attempted to breast-feed her twelve-week-old son, Austin, while waiting in a lay-away line at a Wal-Mart store in Trotwood, Ohio. A store employee interrupted the breast-feeding and informed Jennifer Gore that she could either breast-feed in the restroom or leave the store. Jennifer Gore elected to leave the store with her son. On February 18, 1999, Angie Baird attempted to breast-feed her five-month-old daughter, Kassidee, on a bench near the portrait studio at a Wal-Mart store in Trotwood, Ohio. A store employee interrupted the breast-feeding and informed Angie Baird that she could either breast-feed in the restroom or leave the store. Angie Baird elected to leave the store with her daughter.

In their Memorandum opposing summary judgment, the Plaintiffs set forth a number of additional facts, which may or may not be disputed by Wal-Mart. Those additional facts, however, are *not material* to the issue raised in the pending Motion for Partial Summary Judgment. Among other things, the Plaintiffs allege that Wal-Mart's restrooms are "filthy" and that they lack appropriate places for a nursing mother to sit. The Plaintiffs also allege that public restrooms are generally inappropriate places for infants to eat. Finally, the Plaintiffs allege that breast-feeding is better for infants than feeding from a bottle. The issue before the Court, however, is not whether Wal-Mart's restrooms are dirty, whether restrooms are suitable places to eat, or whether breast-feeding provides infants with health benefits.

For purposes of its present Motion for Partial Summary Judgment, Wal-Mart *does not* argue that requiring mothers and infants who wish to engage in breast-feeding to use a restroom is a reasonable restriction on such activity. Rather, Wal-Mart argues that prohibiting breast-feeding entirely in a place of public accommodation is not sex or age discrimination, period, regardless of where in a store patrons seek to engage in that activity. Consequently, the issue before the Court is simply whether prohibiting breast-feeding activity *anywhere* in a place of public accommodation constitutes sex or age discrimination in violation of Ohio Revised Code § 4112.02(G). Given Wal-Mart's admission (for present purposes) that it has prohibited the Plaintiffs from doing so, the issue before the Court is essentially one of law, involving a question of statutory interpretation.[5]

had diversity jurisdiction in a handicap discrimination suit).

4. Although Wal-Mart's Motion is styled as one for summary judgment, it actually seeks only *partial* summary judgment, as it is directed toward only the § 4112.02(G) claim in the Plaintiffs' amended Complaint, which also includes several common law causes of action. Consequently, the Court will refer to Wal-Mart's Motion as a "Motion for Partial Summary Judgment."

5. Although the Plaintiffs have requested oral argument on Wal-Mart's Motion, the Court finds that oral argument is not needed. Accordingly, the Plaintiffs' request for oral argument is denied.

II. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed. R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present

conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

Wal-Mart seeks summary judgment on only Count IV of the Plaintiffs' amended Complaint, which alleges sex and age discrimination in violation of Ohio Revised Code § 4112.02(G), Ohio's "public accommodation" statute.[6] Section 4112.02(G) provides that it shall be an unlawful discriminatory practice:

> (G) For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev.Code § 4112.02(G).

■■■ "The purpose of the statute is to eradicate illegal discrimination in places of public accommodation so that full enjoyment is available to all. The thrust of the statute, by its terms, is the comparability of treatment. Any denial of enjoyment of services must be applicable to all persons." *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App.3d 82, 103, 721 N.E.2d 1068, 1082 (1999).

■■■ In the present case, the Plaintiffs contend that Wal-Mart is a place of "public accommodation," within the meaning of § 4112.02(G). (Doc. #21 at 11–12). The Plaintiffs also argue that Wal-Mart's act of requiring mothers who wish to breast-feed either to retreat to a restroom or to leave the store constitutes sex discrimination. In support, the Plaintiffs note that Wal-Mart does not require fathers to choose between feeding their infants in the restroom or

---

**6.** Count IV of the Plaintiffs' amended Complaint alleges sex and age discrimination in violation of Ohio Revised Code § 4112.02(G). Counts I, II and III do not set forth any cognizable causes of action. They merely contain factual allegations regarding Wal-Mart's alleged refusal to permit the Plaintiffs to engage in breast-feeding activity. Count V

alleges negligent or intentional infliction of emotional distress. Count VI alleges tortious interference with a mother's right to breast-feed. Count VII alleges loss of consortium. As noted, *supra*, the present Motion for Partial Summary Judgment is directed only toward Count IV.

leaving the premises. (*Id.* at 13-14). Similarly, the Plaintiffs argue that Wal-Mart's act of requiring nursing infants who wish to be breast-fed either to retreat to a restroom or to leave the store constitutes age discrimination. (*Id.* at 14). In support, the Plaintiffs note that Wal-Mart does not require older patrons to choose between eating in a restroom or leaving the premises. (*Id.*). To the contrary, the Plaintiffs note that Wal-Mart has restaurants in its stores and allows patrons to eat as they shop. (*Id.* at 13).

In its Motion for Partial Summary Judgment, Wal-Mart concedes, for present purposes, that it is a place of "public accommodation." (Doc. #12 at 4). Nevertheless, it insists that a prohibition against breast-feeding constitutes neither sex nor age discrimination. In support, Wal-Mart reasons that such a prohibition does not draw a distinction between men and women, or between infants and older individuals. Rather, such a rule draws a distinction between *women* who breast-feed and *women* who do not, and between *infants* who are breast-fed and *infants* who are not. As a result, Wal-Mart argues that the only possible discrimination in the present case is not sex or age discrimination, but "breast-feeding discrimination," which is not prohibited by the Ohio Revised Code. (*Id.* at 4-6).

Upon review, the Court finds Wal-Mart's argument to be persuasive. As an initial matter, the Court notes that the issue in the present case is one of first impression. No state or federal court has decided whether a prohibition against breast-feeding in a place of public accommodation constitutes sex or age discrimination under Ohio Revised Code § 4112.02(G). After examining the language of that provision and reviewing federal case law interpreting the sex discrimination prohibition in Title VII, however, the Court concludes that it does not.

In *General Elec. Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court considered whether Title VII prohibits excluding pregnancy-related disabilities from an employer's disability benefit plan. Upon review, the Court concluded that such an exclusion did not constitute unlawful discrimination on the basis of sex. In reaching this conclusion, the Supreme Court recognized that dividing individuals into two groups, pregnant women and non-pregnant persons, does not constitute sex discrimination. *Id.* at 135, 97 S.Ct. 401 (quoting *Geduldig v. Aiello,* 417 U.S. 484, 496–497 n. 20, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974)).[7] Likewise, in the present case, a

---

**7.** In response to *Gilbert,* Congress amended Title VII by passing the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). That provision expanded the definition of the phrases "because of sex" and "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth or related medical conditions." Under the Act, women "affected by pregnancy, childbirth or related medical conditions shall be treated the same ... as other persons not so affected but similar in their ability or inability to work...." Notably, however, even under this expanded definition, "breast-feeding discrimination" *does not* constitute pregnancy discrimination under Title VII, as amended by the Pregnancy Discrimination Act of 1978. *See, e.g., Wallace v. Pyro*

*Mining Co.,* 789 F.Supp. 867, 869–70 (W.D.Ky.1990), *aff'd* 951 F.2d 351 (6th Cir. 1991). In *Wallace,* the court rejected the plaintiff's claim that she was discriminated against on the basis of sex, because she was not granted sufficient leave to breast-feed her infant. The district court rejected this argument, reasoning that "[w]hile breast-feeding, like pregnancy, is a uniquely female attribute, excluding breast-feeding from those circumstances for which [the employer] will grant personal leave is not impermissible gender-based discrimination, under the principles set forth in *Gilbert." Wallace,* 789 F.Supp. at 869. The court also concluded that a request for breast-feeding leave falls outside the scope of

prohibition against breast-feeding divides people into two groups: (1) women who breast-feed and infants who are breast-fed; and (2) individuals who do not breast-feed and individuals who are not breast-fed. While the first group includes exclusively women and infants, the second group includes members of both sexes and persons of all ages. *Id.* at 135, 97 S.Ct. 401. Such classifications do not constitute discrimination on the basis of sex or age, because they do not draw distinctions on the basis of sex or age. Both of the foregoing groups include women and infants. The only distinction between the two groups is that group one includes individuals who engage in breast-feeding activity, whereas group two does not. Although only women and infants are involved in breast-feeding activity, a prohibition against such activity merely distinguishes between women who breast-feed and women who do not, and between infants who are breast-fed and infants who are not. As the United States District Court for the Southern District of New York recently recognized, relying on *Gilbert:*

> Title VII forbids gender discrimination in employment, but gender discrimination by definition consists of favoring

men while disadvantaging women or *vice versa.* The drawing of distinctions among persons of one gender on the basis of criteria that are immaterial to the other, while in given cases perhaps deplorable, is not the sort of behavior covered by Title VII.

*Martinez v. N.B.C., Inc.,* 49 F.Supp.2d 305, 309 (S.D.N.Y.1999).

In *Martinez,* the plaintiff alleged that the defendants had engaged in sex discrimination by failing to provide her with a place to pump breast milk at work. The district court rejected this claim, reasoning that discrimination against pumping breast milk is not discrimination "because of sex." Despite the fact that only women pump breast milk, the district court concluded that failing to permit such activity does not favor men over women. At most, the employer's conduct merely treated the plaintiff poorly on the basis of a characteristic, breast-feeding, that is unique to women. *Id.* at 309–310.

■ The *Martinez* court also reasoned that the plaintiff could not establish "sex-plus" discrimination, which exists " 'when a person is subjected to disparate treatment based not only on her sex, but on her sex considered in conjunction with a second

---

the Pregnancy Discrimination Act of 1978. *Id.; see also McNill v. New York City Dep't of Correction,* 950 F.Supp. 564, 569–71 (S.D.N.Y.1996) (noting that the Pregnancy Discrimination Act of 1978 "only provides protection based on the condition of the mother--not the condition of the child").

In any event, the Court notes that Ohio Revised Code § 4112.02(G), which applies to places of public accommodation, *does not* include the language of the Pregnancy Discrimination Act of 1978, which defines sex discrimination to include pregnancy discrimination. For purposes of § 4112.02(A ) through § 4112.02(F ), which prohibit sex discrimination in other contexts, the Ohio Revised Code does define the phrases "because of sex" and "on the basis of sex" to include "because of or on the basis of pregnancy, any illness aris-

ing out of and occurring during the course of a pregnancy, childbirth, or related medical conditions." Ohio Rev.Code § 4112.01(B). This definition, which is similar to the language of the Pregnancy Discrimination Act of 1978, does not apply to § 4112.02(G), the provision at issue in the present case. *See* Ohio Rev.Code § 4112.02(B). Consequently, Ohio's prohibition against "pregnancy discrimination" has no applicability herein for two reasons: (1) breast-feeding discrimination does not constitute pregnancy discrimination (*see, e.g. Wallace, supra*); and (2) Ohio's statutory prohibition against pregnancy discrimination, which is treated as a form of sex discrimination, does not apply to Ohio Revised Code § 4112.02(G), the public accommodation section of Chapter 4112.

characteristic.' " *Id.* at 310. In *Martinez,* the plaintiff argued that the second characteristic was her need or desire to pump breast milk. The district court rejected this argument, reasoning:

"Sex-plus" discrimination is widely recognized. It is impermissible to treat men characterized by some additional characteristic more or less favorably than women with the same added characteristic. But that is not plaintiff's complaint. It cannot be for the quite simple reason that men are physiologically incapable of pumping breast milk, so plaintiff cannot show that she was treated less favorably than similarly situated men. Rather, she claims that she was the victim of gender discrimination because the employer allegedly subjected her to unfavorable treatment on the basis of a characteristic-breast feeding-that is unique to women. But the "sex-plus" theory does not go so far. Indeed, it logically cannot do so.

Precisely this question recently was before the Tenth Circuit in *Coleman v. B-G Maintenance Management of Colorado, Inc.,* [108 F.3d 1199, 1203 (10th Cir.1997) ], which aptly stated that "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender." And the reason is plain:

"[W]hen one proceeds to cancel out the common characteristics of the two classes being compared ( [e.g.,] mar-

ried men and married women), as one would do in solving an algebraic equation, the canceled-out element proves to be that of married status, and *sex remains the only operative factor in the equation.*"

On the other hand, if there is no comparable subclass of members of the opposite gender, the requisite comparison to the opposite gender is impossible.

*Id.* at 310 (footnotes omitted). In other words, in a "sex-plus" or "gender-plus" case, "the protected class need not include all women, [but] the plaintiff must still prove that the subclass of women was unfavorably treated *as compared to the corresponding subclass of men.*" *Coleman,* 108 F.3d at 1203 (emphasis added).[8] Absent such a subclass, a plaintiff cannot establish sex discrimination. *Id.*

Admittedly, the foregoing case law involves Title VII, whereas the present case involves the application of Ohio Revised Code § 4112.02(G). Given that the present case raises an issue of first impression under Ohio law, however, the Court finds it both appropriate and necessary to venture beyond state law to resolve the parties' dispute. Indeed, both parties have recognized that there is *no* Ohio law on point. In addition, the Court finds the federal case law cited above to be instructive, insofar as both Title VII and the Ohio Revised Code prohibit discrimination on the basis of sex.[9] Finally, the *logic* of the

8. For example, a plaintiff might allege that her employer discriminated against women with children in day care by failing to permit her to leave work promptly at 4:30 p.m. In order to establish sex discrimination under such a theory, the plaintiff would have to demonstrate that her employer permitted men with children in day care to leave work promptly at 4:30 p.m. Absent such evidence, the plaintiff could not possibly demonstrate that the employer's discrimination was because of sex. In the case of breast-feeding,

*Martinez* makes clear that the "sex-plus" theory cannot ever apply, because there is no sub-class of breast-feeding men with which the sub-class of breast-feeding women can compare itself.

9. Although Title VII does not encompass age discrimination, the Court discerns no reason why (and the Plaintiffs have not articulated any reason why) the analysis set forth herein would not apply equally to the age discrimination claims brought on behalf of Devin Der-

foregoing analysis applies with equal force, regardless of the statutory context in which it is applied.

■ With the foregoing principles in mind, the Court turns now to its review of Ohio Revised Code § 4112.02(G). As set forth above, that provision makes it an unlawful discriminatory practice for Wal-Mart "to deny to any person, except for reasons applicable alike to all persons regardless of ... sex [or] ... age ..., the full enjoyment of the accommodations, advantages, facilities, or privileges" of its stores. Stated differently, § 4112.02(G) prohibits Wal-Mart, a place of public accommodation, from discriminating against its patrons, with respect to their use and enjoyment of its facilities, because of their sex or age. In this regard, § 4112.02(G) is similar to other portions of § 4112.02,

which prohibit, *inter alia*, sex or age discrimination in other contexts. *See, e.g.,* Ohio Rev.Code § 4112.02(A) (prohibiting employers from discriminating "because of" sex or age); Ohio Rev.Code § 4112.02(B) (prohibiting employment agencies from discriminating "because of" sex or age); Ohio Rev.Code § 4112.02(C) (prohibiting labor organizations from discriminating "on the basis of" sex or age); Ohio Rev.Code § 4112.02(D) (prohibiting discrimination in apprentice training "because of" sex or age); Ohio Rev. Code § 4112.02(E) (prohibiting limits on employment opportunities "because of" sex or age); Ohio Rev. Code § 4112.02(F) (prohibiting prospective employees from placing an advertisement that expresses a preference to work for someone of a particular sex or age).[10]

---

ungs, Austin Gore and Kassidee Baird. Although a separate federal statute, the Age Discrimination in Employment Act, addresses age discrimination, the Court has found no analogous case law under that statute which would apply to the Plaintiffs' novel age discrimination claims.

**10.** Whereas certain portions of § 4112.02 prohibit discrimination "because of" or "on the basis of" sex or age, the Court notes that § 4112.02(G), which applies to places of public accommodation, is worded somewhat differently. As noted, *supra*, that provision makes it an unlawful discriminatory practice:

(G) For any proprietor or any employee, keeper, or manager of a place of public accommodation *to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry,* the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev.Code § 4112.02(G) (emphasis added).

Section 4112.02(G), like the other portions of Ohio Revised Code § 4112.02, is plainly intended to eradicate, *inter alia*, sex and age discrimination. It appears to the Court, however, that § 4112.02(G), unlike the other portions of § 4112.02, prohibits only *intentional*

*discrimination (i.e., "disparate treatment")*. In other words, § 4112.02(G) does not appear to reach so-called "disparate impact" or "adverse impact" claims, which do not require a showing of intent to discriminate and which involve the application of a facially neutral policy or practice that has a discriminatory effect on a protected class.

Although no Ohio court has addressed this issue, the Court notes that § 4112.02(G), unlike other portions of § 4112.02, expressly *allows* places of public accommodation to deny patrons the full use and enjoyment of their facilities "for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry[.]" The *very essence* of a "disparate impact" or "adverse impact" claim, however, is that it challenges a facially neutral standard or practice that is "applicable alike" to all persons, regardless of their race, color, religion, sex, national origin, handicap, age, or ancestry, but that nevertheless has a discriminatory effect on a particular protected group. By expressly allowing places of public accommodation to adopt facially neutral policies or practices that limit the use of their facilities for reasons "applicable alike" to all individuals, the Ohio General Assembly appears to have limited § 4112.02(G) to prohibiting only intentional discrimination or "disparate treatment."

After reviewing the language of Ohio Revised Code § 4112.02(G), the Court discerns no principled basis for distinguishing Ohio's prohibition against discrimination on the basis of sex or age by places of public accommodation from the Title VII analysis set forth above. As the Court has explained, *supra*, drawing distinctions among women or among infants, on the basis of their participation in breast-feeding activity, simply is not the same as drawing distinctions between women and men or between infants and older individuals. A prohibition against breast-feeding merely divides people into two groups: (1) women who breast-feed and infants who are breast-fed; and (2) individuals who do not breast-feed and individuals who are not breast-fed. As noted above, although the first group includes exclusively women and infants, the second group includes members of both sexes and persons of all ages. If anything, such classifications establish "breast-feeding discrimination," which, as demonstrated herein, is not discrimination on the basis of sex or age under the law.

■ In their Memorandum opposing summary judgment, however, the Plaintiffs insist that their claims of sex and age discrimination do not require a showing that Wal-Mart discriminates against *all* women and infants. (Doc. #21 at 14). It is enough, the Plaintiffs argue, to show that Wal-Mart denies *some* women and infants (*i.e.*, women and infants who wish to engage in breast-feeding activity) the full use and enjoyment of its facilities. This argument misses the point. It is not unlawful to discriminate against a protected subclass (*i.e.*, women who breast-feed or, presumably, infants who are breast-fed),[11] *unless* such discrimination is *because of* sex or age. Herein, the Plaintiffs *cannot* establish such "sex-plus" or "age-plus" discrimination, absent evidence that Wal-Mart treated a corresponding sub-class (*i.e.*, men who breast-feed or adults who are breast-fed) better by allowing them to engage in breast-feeding activity in its stores. *See*

While Ohio's courts have not addressed this issue, the California Supreme Court reached the same conclusion when reviewing a similar state statute that prohibited discrimination by places of public accommodation. *See Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1172-1173, 278 Cal.Rptr. 614, 805 P.2d 873, 891 (1991) (*en banc*) ("[A]s we have noted, the Act explicitly exempts standards that are applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability.... By its nature, an adverse impact claim challenges a standard that it applicable alike to all such persons based on the premise that, notwithstanding its universal applicability, its actual impact demands scrutiny. If the Legislature had intended to include adverse impact claims, it would have omitted or at least qualified this language....").

In any event, the Plaintiffs have not framed the issue in the present case as one requiring a disparate impact analysis. Rather, they appear to allege intentional discrimination (*i.e.*, disparate treatment). As set forth, *supra*,

Plaintiffs Dana Derungs, Jennifer Gore and Angie Baird contend that Wal-Mart treated them less favorably than male patrons, who are not required to leave the store or to feed their infants in a restroom. Likewise, Plaintiffs Devin Derungs, Austin Gore and Kassidee Baird contend that Wal-Mart treated them less favorably than older patrons, who are not required to leave the store or to eat in a restroom. Such arguments indicate that the Plaintiffs are proceeding on a disparate treatment theory, which requires a showing of intentional discrimination on the basis of sex and/or age. Insofar as the Plaintiffs' amended Complaint might be read as asserting a disparate impact claim, the Court concludes, based upon the reasoning set forth herein, that relief for such a claim is not available under § 4112.02(G).

11. For purposes of its analysis herein, the Court will assume, *arguendo*, as Wal-Mart has done, that infants constitute a protected age group with respect to § 4112.02(G)'s prohibition against age discrimination.

*Coleman,* 108 F.3d at 1203; *Martinez,* 49 F.Supp.2d at 310. In the present case, the Plaintiffs cannot possibly come forward with such evidence, because men do not produce breast milk and adults do not breast-feed from their mothers. As a result, it is impossible for the Plaintiffs to demonstrate that Wal-Mart discriminates against women and infants who engage in breast-feeding activity *because of their status as women (sex discrimination) or infants (age discrimination).* Rather, the Plaintiffs can establish only that Wal-Mart treated them poorly because of a characteristic, breast-feeding, that is unique to women and infants. As the case law cited above demonstrates, however, such "breast-feeding discrimination," which draws distinctions among women and infants, based on a characteristic that is simply inapplicable to men and to older individuals, does not constitute sex or age discrimination. Consequently, the Court holds that a prohibition against breast-feeding in a place of public accommodation does not violate Ohio Revised Code § 4112.02(G). Accordingly, Wal-Mart's Motion for Partial Summary Judgment (Doc. #12) will be sustained.

IV *Conclusion*

Based on the reasoning and citation of authority set forth above, the Motion for Partial Summary Judgment (Doc. #12) filed by Defendant Wal-Mart Stores, Inc., is hereby sustained.