ALLEN, APPELLANT, *v.* TOTES/ISOTONER CORPORATION, APPELLEE.

[Cite as *Allen v. totes/Isotoner Corp.,* 123 Ohio St.3d 216, 2009-Ohio-4231.]

*Employment discrimination — Burden of proof — Summary judgment — Failure to follow directions is a legitimate reason for discharge — Judgment affirmed.*

(No. 2008-0845 — Submitted March 11, 2009 — Decided August 27, 2009.)

APPEAL from the Court of Appeals for Butler County, No. CA2007-08-196.

_____

**Per Curiam.**

{¶ 1} This case arises from a grant of summary judgment in favor of totes/Isotoner Corporation, LaNisa Allen's employer, on a discrimination complaint arising out of the Ohio Fair Employment Practices Act, R.C. Chapter 4112, as amended by the Pregnancy Discrimination Act, 138 Ohio Laws, Part I, 1430, 1431-1432. We originally accepted Allen's discretionary appeal, which sought review of the issue whether Ohio law prohibits an employer from discriminating against a female employee because of or on the basis of lactation. For the reasons stated below, we find that summary judgment was properly granted for appellee, totes/Isotoner Corporation ("Isotoner"), against appellant, LaNisa Allen, on her claims for wrongful termination. Accordingly, we affirm the judgment of the court of appeals.

{¶ 2} In its opinion affirming the grant of summary judgment to the employer, the Twelfth District Court of Appeals ruled that Allen had failed to establish a prima facie case of sex discrimination on the basis of pregnancy, and it concluded that Allen's termination does not violate Ohio public policy against discrimination on the basis of pregnancy. The appellate court ruled that Allen "was simply and plainly terminated as an employee at will for taking an

unauthorized, extra break." *Allen v. totes/Isotoner* (Apr. 7, 2008), Butler App. No. CA2007-08-196, ¶ 3.

{¶ 3} Allen admitted in her deposition that for approximately two weeks, she had taken breaks without her employer's knowledge or authorization to do so and that her supervisor had told her that she was being terminated for her failure to "follow directions."

{¶ 4} As a general matter, if a plaintiff establishes a prima facie case of disparate-treatment employment discrimination under R.C. Chapter 4112, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its treatment of the plaintiff. See, e.g., *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 197-198, 20 O.O.3d 200, 421 N.E.2d 128; *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506-507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (analyzing the federal employment-discrimination statute). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff based upon an impermissible category remains on the plaintiff. Id. at 507.

{¶ 5} Legitimate, nondiscriminatory reasons in Ohio law include insubordination. *Hood v. Diamond Prods., Inc.* (1996), 74 Ohio St.3d 298, 302, 658 N.E.2d 738. If the employer carries its burden of articulating a legitimate, nondiscriminatory reason for its employment decision, the plaintiff must prove that the employer's stated nondiscriminatory reasons were a pretext for impermissible discrimination. Id.; see also *St. Mary's Honor Ctr.*, 509 U.S. at 519, 113 S.Ct. 2742, 125 L.Ed.2d 407. If an employment-discrimination plaintiff fails to establish a triable factual issue on an essential element of her case, summary judgment for the employer is appropriate. See, e.g., *Simpson v. Des Moines Water Works* (C.A.8, 2005), 425 F.3d 538, 542.

{¶ 6} In this case, the evidence in the record demonstrates that Allen took unauthorized breaks from her workstation, and Isotoner discharged her for doing so. Thus, the record as it was developed in the trial court fails to provide a basis from which a jury could conclude that Isotoner's articulated legitimate, nondiscriminatory reason for Allen's termination—failure to follow directions—was a pretext for discrimination based on Allen's pregnancy or a condition related to her pregnancy. This determination defeats Allen's sex-discrimination claim under R.C. 4112.02 as a matter of law, and, accordingly, the trial court properly granted summary judgment to Isotoner. Consequently, this court does not reach the issue whether alleged discrimination due to lactation is included within the scope of Ohio's employment-discrimination statute, R.C. 4112.02, as sex discrimination under R.C. 4112.01(B).

{¶ 7} Because summary judgment was properly entered against Allen, we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR, J., concur in judgment only.

PFEIFER, J., dissents.

LANZINGER, J., would dismiss the appeal as having been improvidently accepted.

_____

**O'DONNELL, J., concurring.**

{¶ 8} I concur in the judgment affirming the summary judgment in totes/Isotoner's favor, because totes/Isotoner discharged LaNisa Allen for taking an unauthorized break from her scheduled employment. That fact is undisputed in the record before us, and Allen failed to carry her burden of proving either that totes/Isotoner had a discriminatory motive or that its reason for discharging her was a pretext for discrimination. Consequently – and necessarily, in accordance

with long-standing prudential considerations widely utilized by the courts – I would not reach the issue whether adverse differential treatment because of postpregnancy lactation falls within actionable discrimination as defined by the General Assembly in R.C. Chapter 4112.

{¶ 9} It is the long-standing practice of courts to decide only issues presented by the facts and to refrain from deciding issues that the facts do not place directly in issue. Because of the relevant and determinative facts of this case, the resolution of the dispute of the parties before us does not turn on whether R.C. 4112.02 encompasses alleged discrimination due to lactation. Because the court need not reach this issue, any opinion expressed on the issue would be merely advisory and not in accordance with the long-standing practice of courts to decline to render advisory opinions.

{¶ 10} It is well-settled law that this court will not issue advisory opinions. *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing *State ex rel Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 242, 736 N.E.2d 893; *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904, syllabus. "It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect." *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371. Because the court need not reach the issue of whether discrimination on the basis of lactation is prohibited by R.C. 4112.02, it should not do so. See *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.* (C.A.D.C.2004), 362 F.3d 786, 799 (Roberts, J., concurring in part and concurring in the judgment, "if it is not necessary to decide more, it is necessary not to decide more").

LUNDBERG STRATTON and CUPP, JJ., concur in the foregoing opinion.

—————————

**MOYER, C.J., concurring in judgment only.**

{¶ 11} I agree that summary judgment was properly entered against the appellant, LaNisa Allen, and thus I concur in the judgment. Because I also concur in Justice O'Connor's separate discussion of the merits, I join her opinion, not the per curiam opinion.

—————————

**O'CONNOR, J., concurring in judgment only.**

{¶ 12} LaNisa Allen's complaint alleged that Isotoner discriminated against her on the basis of pregnancy, "a condition of gender," in violation of Ohio's Fair Employment Practices Act, R.C. Chapter 4112 ("FEPA"), as amended by Ohio's Pregnancy Discrimination Act ("PDA"), 138 Ohio Laws, Part I, 1430, 1431-1432; that her termination was against public policy; that her "medical condition, the act of lactating, constitutes a 'handicap' " for purposes of the FEPA; and that she had been discriminated against on the basis of her handicap under the Americans with Disabilities Act ("ADA").

{¶ 13} We asserted discretionary jurisdiction to review three propositions of law that arise from the claims in this case, *Allen v. totes/Isotoner Corp.*, 119 Ohio St.3d 1443, 2008-Ohio-4487, 893 N.E.2d 515, including the assertion that "lactation is a physical condition associated with pregnancy and childbirth, hence the FEPA, as amended by the Ohio PDA, prohibits discrimination against females because they are lactating."

{¶ 14} I agree that appellee Allen failed to develop a record from which a jury could find in her favor. But because the trial and appellate courts erroneously applied inapposite federal precedent in their analysis of Allen's claims, I believe that this court should reach the merits to clarify the law. I therefore concur in judgment only. I write separately to set forth why I would hold that lactation falls within the scope of R.C. 4112.01(B) and that the statute

prohibits employment discrimination against lactating women. R.C. 4112.02. In doing so, I am fully aware of the assertion that my opinion is advisory. I disagree. The lead opinion's failure to address the legal framework in which this case arises is disappointing, and it is even more troubling that we fail to address the scope of Ohio law under the guise that reaching the merits would result in an advisory opinion.

{¶ 15} The bald assertion that any opinion analyzing Allen's claim would be advisory is patently unpersuasive. Indeed, the cases cited by the concurring opinion, essentially, are ones in which we found an issue to be moot on appeal and therefore refused to provide advisory opinions. The cases cited are wholly distinguishable from this appeal, however. See *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18 (holding that relators' appeal, which arose from the denial of extraordinary writs to prevent a trial judge from proceeding with a temporary restraining order that enjoined relators from using taxpayer funds to communicate with the public about an election issue, was moot because the election had passed); *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (declining to reach the merits of the relators' claim for a writ of prohibition in an election protest after concluding that the writ would not lie because the respondents had not engaged in quasi-judicial acts); *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904, syllabus (in an employer-intentional-tort claim, holding, "Where the grant of summary judgment favorable to a defendant neither considers nor awards damages, an issue pertaining to damage setoffs raised by the defendant-appellant for the first time on appeal to the Supreme Court will not be entertained because it is not a justiciable issue").

{¶ 16} In the cases cited, we properly refused to entertain the question presented because the question need not be answered to give proper resolution to the case. But that is not the dynamic in this case.

{¶ 17} A case or controversy is lacking and the " 'case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.' " *Los Angeles Cty. v. Davis* (1979), 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642, quoting *Powell v. McCormack* (1969), 395 U.S. 486, 489, 89 S.Ct. 1944, 23 L.Ed.2d 491. "Not every conceivable controversy is an actual one. * * * [I]n order for a justiciable question to exist, '[t]he danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events * * * and the threat to [her] position must be actual and genuine and not merely possible or remote.' " *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9, citing *League for Preservation of Civ. Rights & Internal Tranquility, Inc. v. Cincinnati* (1940), 64 Ohio App. 195, 197, 17 O.O. 424, 28 N.E.2d 660, quoting Borchard, Declaratory Judgments (1934) 40.

{¶ 18} " 'No actual controversy exists where a case has been rendered moot by an outside event. "It is not the duty of the court to answer moot questions, and when, pending proceedings in error in this court, an event occurs, without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error." *Miner v. Witt* (1910), 82 Ohio St. 237, 92 N.E. 21, syllabus.' " *McClead v. McClead*, Washington App. No. 06CA67, 2007-Ohio-4624, ¶ 13, quoting *Tschantz v. Ferguson* (1991), 57 Ohio St.3d 131, 133, 566 N.E.2d 655. " 'A cause will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief.' " Id., quoting *Joys v. Toledo* (Apr. 29, 1997), Franklin App. No. 96APE08-1040, 1997 WL 217581, *3.

{¶ 19} In this appeal, the issues are live ones, not remote possibilities or based on controversies that may never occur. See *Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, at ¶ 11, quoting *Bilyeu v Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 303 N.E.2d 871. Allen, a lactating employee, was terminated from employment for not following directions — i.e., for taking an unauthorized break from her work station in order to use a breast pump. The determination of whether that action was lawful cannot be made in a vacuum. Rather, the determination depends on the facts she marshals *as well as* the state of the law in Ohio, *not* the state of federal law as defined in the federal courts.

{¶ 20} The principle of judicial restraint, that " if it is not necessary to decide more, it is necessary not to decide more," *PDK Laboratories, Inc. v. United States Drug Enforcement Admin.* (C.A.D.C.2004), 362 F.3d 786, 799 (Roberts, J., concurring in part and in judgment), is an important one. But here, it is inapplicable because it is necessary to decide "more."

{¶ 21} The question whether Ohio law recognizes discrimination claims based on lactation is one of great general interest. Allen and Isotoner, as well as all Ohio's employees and employers, are entitled to the answer and to guidance on the contours of Ohio's employment laws. It is our duty to provide that guidance and to answer the questions posed in this controversy. *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371 ("it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect"). I thus proceed.

**I**

{¶ 22} In entering summary judgment against Allen, the trial court found that Allen had not been discriminated against on the basis of pregnancy. According to the trial court, "Allen gave birth over five months prior to her

termination from [Isotoner]. Pregnant [women] who give birth and chose not to breastfeed or pump their breasts do not continue to lactate for five months. Thus, Allen's condition of lactating was not a condition relating to pregnancy but rather a condition related to breastfeeding. Breastfeeding discrimination does not constitute gender discrimination. See *Derungs v. Wal-Mart Stores Inc.,* 374 F.3d 428, 439 (6th Cir. 2004)." Upon that finding, the court found that postpartum lactation and the discomfort associated with it are not disabilities.

{¶ 23} The court of appeals affirmed. In a conclusory decision, it held that Allen had not presented a prima facie case of sex discrimination on the basis of pregnancy and that her termination did not offend Ohio public policy. *Allen v. totes/Isotoner Corp.* (Apr. 7, 2008), Butler App. No. CA2007-08-196. According to the court of appeals, "appellant was not terminated because she was lactating, pumping breast milk, or needed to take a break to pump breast milk. Rather, she was simply and plainly terminated as an employee at will for taking an unauthorized, extra break (unlike the restroom breaks which were authorized and available to all of the employees, appellant included)."

## II

### *Pregnancy and Lactation as Objects of Sex Discrimination*

{¶ 24} Among other things, the FEPA prohibits an employer from discharging or discriminating against a person in the tenure, terms, conditions, or privileges of employment because of the person's sex or disability. R.C. 4112.02(A). Through the PDA amendments to the FEPA, which became effective in 1980, the General Assembly has made clear that the statutory phrases "because of sex" and "on the basis of sex" include all claims "because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes * * *." R.C. 4112.01(B). The amended

9

statutory framework now embodied in Ohio's FEPA developed similarly to its federal counterpart, Title VII of the Civil Rights Act of 1964, section 2000e(k), Title 42, U.S.Code, the federal Pregnancy Discrimination Act of 1978.

{¶ 25} In the wake of the controversial decision *Gen. Elec. Co. v. Gilbert* (1976), 429 U.S. 125, 139-140, 97 S.Ct. 401, 50 L.Ed.2d 343, in which the United States Supreme Court rejected a disparate-treatment sex-discrimination claim based on a disability insurance plan's refusal to cover pregnancy-related disabilities, Congress amended Title VII to make clear that sex-discrimination includes discrimination based on pregnancy. See, e.g., *California Fed. S. & L. Assn. v. Guerra* (1987), 479 U.S. 272, 284-285, 107 S.Ct. 683, 93 L.Ed.2d 613; *Newport News Shipbuilding & Dry Dock Co. v. Equal Emp. Opportunity Comm.* (1983), 462 U.S. 669, 678, 103 S.Ct. 2622, 77 L.Ed.2d 89.

{¶ 26} The federal PDA explicitly expanded the terms "because of sex" and "on the basis of sex" to include the concepts "because of or on the basis of pregnancy, childbirth, or other related conditions" and to affirm that " 'women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work.' " *Fortier v. U.S. Steel Corp.* (June 4, 2002), W.D.Pa. No. 01-cv-2029, 2002 WL 1797796,* 3, quoting Section 2000e(k), Title 42, U.S.Code. The essential command of the PDA is that an employer must maintain the same neutrality toward an employee's pregnancy as it would an employee's race, gender, or other protected-class status. *Pacourek v. Inland Steel Co.* (N.D.Ill.1994), 858 F.Supp. 1393, 1400. And the legislative history of the federal PDA suggests strongly that neutrality must be maintained before, during, and after a pregnancy. Id. at 1402, citing 123 Congressional Record 29385 (1977).

{¶ 27} Soon after Congress enacted the PDA amendments to Title VII, Ohio followed suit. *Derungs,* 374 F.3d at 436 (after *Gilbert* and the passage of

the federal PDA, the Ohio General Assembly amended R.C. 4112.02(A) by adopting the Ohio PDA, R.C. 4112.01(B), in 1980). The Ohio General Assembly's unambiguous intent in passing the Ohio PDA is well understood. "Having incorporated the [federal] PDA's language almost verbatim into the definitional provisions of § 4112, it is clear to us that the Ohio Legislature was aware of the meaning and rationale of *Gilbert*, as well as being aware of the PDA. The Legislature made a conscious choice to extend the definition of discrimination to include pregnancy even though there cannot be a class of similarly situated males." *Derungs,* 374 F.3d at 436.

{¶ 28} In evaluating Allen's claims, the trial and appellate courts ignored the foregoing history. Rather, central to both courts' analysis is the Sixth Circuit's decision in *Derungs*, a public-accommodations case brought by a woman who had been prohibited from breast-feeding her infant while sitting on a bench near a dressing room in a Walmart store. *Derungs v. Wal-Mart Stores Inc.* (S.D.Ohio 2000)*,* 141 F.Supp.2d 884, 886. In that case, the district court granted partial summary judgment in favor of Walmart on the plaintiff's claims for sex and age discrimination in violation of R.C. 4112.02(G), and the Sixth Circuit affirmed. *Derungs*, 374 F.3d at 440.

{¶ 29} In rendering their decisions, the federal courts applied the *Gilbert* analysis that had been rejected expressly by both Congress and the Ohio Legislature. See *Derungs*, 141 F.Supp.2d at 889-892. In doing so, the federal courts decided the case on federal case law. Id. at 889-893.

{¶ 30} Significantly for purposes here, *Derungs* did not involve employment discrimination, but rather, a claim for discrimination in public accommodations. And as the federal courts recognized, when the Ohio General Assembly passed the PDA, it did not amend the public-accommodations portion of R.C. Chapter 4112. See *Derungs*, 141 F.Supp.2d at 889, fn. 7; see also *Derungs,* 374 F.3d at 436.

**{¶ 31}** I find that fact significant. *Derungs* is inapposite here because its analysis revolves around a portion of R.C. Chapter 4112 that was not amended by the PDA. And evidently, *Derungs* did not reflect Ohio legislators' view of the law: after *Derungs* was decided, the Ohio General Assembly enacted R.C. 3781.55, which permits a mother to breast-feed her child in a place of public accommodation.

**{¶ 32}** I recognize that the federal courts' analysis in *Derungs* is not inconsistent with the federal courts' continued reliance on *Gilbert* notwithstanding the PDA. Reasonable minds may differ about the merit of the rule set forth in *Gilbert*. But given our legislature's clear and unambiguous rejection of the *Gilbert* analysis, I decline to apply those rationales in our analysis of pregnancy-discrimination claims brought under the gender-equity prong of the FEPA.[1] Given the clarity with which our legislature has spoken on this issue and its insistence that gender-based discrimination can include pregnancy-based discrimination, we should engage in a meaningful analysis centered on the statutory language.

**{¶ 33}** Ohio's PDA affords protection to employees "because of or on the basis of pregnancy" and states that "[w]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes * * * as other persons not so affected but similar in their ability or inability to work * * *." R.C. 4112.01(B). That language is broad.

**{¶ 34}** "Related" and "affected" are expansive terms. "Related" means "connected by reason of an established or discoverable relation," and "relation" means "an aspect or quality (as resemblance) that connects two or more things or parts as being or belonging or working together or as being of the same kind."

---

1. I am aware of the debates that surround breast-feeding in forums as divergent as law reviews, public health journals, and the popular press. But our role as judges is not to substitute our own views of those issues for those of the legislature as they are embodied in the Revised Code. Rather, we must follow the laws as written by the legislature and interpret them accordingly.

Merriam-Webster's Collegiate Dictionary (10th Ed.1993) 987. "Affected," the past tense of "affect," means "[having] produce[d] an effect upon" and "[having] produce[d] a material influence upon." Id. at 19.

{¶ 35} Despite this broad language, the trial court found that discrimination on the basis of lactation is not the same as discrimination on the basis of pregnancy because "Allen's condition of lactating was not a condition relating to pregnancy but rather a condition relating to breastfeeding." I find that conclusion curious and inaccurate.

{¶ 36} Lactation – the formation and secretion of milk by the mammary glands – is believed to be stimulated by prolactin, a hormone. 1 Russ, Freeman, & McQuade, Attorneys Medical Advisor (Aug.2008) Section 4:5. During pregnancy, the level of prolactin in a woman is inhibited by high levels of estrogen and progesterone. Id. at Section 14:228. Following delivery, levels of estrogen and progesterone in the woman fall while the level of prolactin remains high. Id. at Section 14:26. Prolactin then stimulates and maintains the production of milk. Id. at Section 4:5.

{¶ 37} Colostrum, a substance that contains more protein and less fat and sugar than breast milk, is secreted by the breasts during pregnancy and in the days immediately following childbirth. Russ, Section 14:228. Milk production begins thereafter, usually on the third or fourth postpartum day, and breast milk appears. Id. at Section 14:26.

{¶ 38} As the trial court found, lactation obviously is linked to breast-feeding. But given the physiological aspects of lactation, I have little trouble concluding that lactation also has a clear, undeniable nexus with pregnancy and with childbirth. Therefore, it necessarily follows that lactation is "because of or on the basis of pregnancy" and that women who are lactating are women "affected by pregnancy [or] childbirth." Accord *Pacourek*, 858 F.Supp. at 1402, quoting House Report (1978), No. 95-948, 95th Congress, 2d Session 5,

concluding that a liberal construction of the federal PDA is proper, given its legislative history, and that " 'the bill makes clear that its protection extends to the whole range of matters concerning the childbearing process.' " Accordingly, I would hold that gender-discrimination claims arising from lactation are cognizable under Ohio's FEPA as amended by the PDA. But the analysis of this appeal does not end with that conclusion.

{¶ 39} Allen's claims of discrimination appear predicated on a disparate-treatment theory. She asserts, "The workrule that [she] allegedly violated was the one that restricted the time she could pump her breast milk to her lunch break. Totes placed no such restrictions on any other employee who needed to leave his or her workstation to tend to a bodily function or bodily discomfort, only upon lactating women. The work rule was itself discriminatory, since it placed extra restrictions on women experiencing a physical act of pregnancy." The appellate court implicitly addressed that claim, holding that Allen "was simply and plainly terminated as an employee at will for taking an unauthorized, extra break (unlike the restroom breaks which were authorized and available to all of the employees, appellant included)." *Allen*, Butler App. No. CA2007-08-196, 2-3.

### III

{¶ 40} In order to establish a prima facie case for disparate treatment based upon pregnancy discrimination in the workplace, the plaintiff must show that (1) she was pregnant, (2) she satisfactorily performed the duties required by the position for which she was hired, (3) she was discharged, and (4) her position was ultimately filled by an employee who was not pregnant. See *Donaldson v. Am. Banco Corp., Inc.* (D.Colo.1996), 945 F.Supp. 1456, 1463, citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. I would find that a plaintiff may satisfy the first element of this prima facie test by showing that she was affected by pregnancy or an illness or medical condition related to pregnancy.

{¶ **41**} As with other discrimination claims, a prima facie case gives rise to a presumption of discrimination and shifts the burden of production to the defendant to articulate a legitimate, nondiscriminatory reason for its treatment of the plaintiff. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506-507, 113 S.Ct. 2742, 125 L.Ed.2d 407. Legitimate, nondiscriminatory reasons for the action taken by the employer include insubordination on the part of the employee claiming discrimination. *Hood v. Diamond Prods., Inc.* (1996), 74 Ohio St.3d 298, 302, 658 N.E.2d 738.

{¶ **42**} If the defendant carries that burden of production, the presumption of discrimination drops from the case. *Gudenkauf v. Stauffer Communications, Inc*. (D.Kan.1996), 922 F.Supp. 465, 471, fn. 7. The plaintiff must then directly prove that the employer acted on a discriminatory motive or indirectly prove that the employer's reasons were a pretext for discrimination. Id. If she fails to do so, summary judgment is appropriate. Id.

{¶ **43**} The undisputed evidence here is that Allen took unauthorized breaks from her work station. Isotoner asserts that it discharged her for doing so.

{¶ **44**} Although Allen's unauthorized breaks may have been to pump milk, Allen could not properly engage in such actions without her employer's knowledge and permission. The FEPA and the PDA mandate that an employer treat pregnancy with neutrality, but not preferentially.

{¶ **45**} Allen argues that the break policy discriminates against lactating women because other employees are able to use the bathroom freely to attend to bodily functions like menstruation and urination. But Allen was not forbidden to take similar breaks, nor has she presented any evidence that any other employee routinely used the bathroom for 15-minute breaks on a scheduled basis each day. Thus, the record in this case would not support a reasonable jury's verdict in Allen's favor on a disparate-treatment theory. Summary judgment was properly entered against her.

## IV

### *Pregnancy and Lactation as Disability*

{¶ 46} I turn now to the issue of whether pregnancy and lactation are disabilities for purposes of disability-discrimination analysis. I would hold that they are not.

{¶ 47} To establish a prima facie case of disability discrimination, the plaintiff must demonstrate (1) that she is disabled, (2) that an adverse employment action was taken by an employer, at least in part, because of the disability, and (3) that the plaintiff, though disabled, can safely and substantially perform the essential functions of the job in question. *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 25 OBR 331, 496 N.E.2d 478. Here, there is no showing that Allen satisfied the first prong of the test, i.e., that she was disabled by virtue of her pregnancy or lactation.

{¶ 48} The courts that have considered this issue have found uniformly that pregnancy, by itself, is not a disability per se for purposes of ADA claims because "[s]hort term, temporary restrictions are not substantially limiting and do not render a person disabled." *Kucharski v. Cort Furniture Rental* (D.Conn.2007), 536 F.Supp.2d 196, 202, reversed on other grounds, (D.Conn.2008), 594 F.Supp.2d 207. See also *Wenzlaff v. NationsBank* (D.Md.1996), 940 F. Supp. 889, 890; *Villarreal v. J.E. Merit Constructors, Inc.* (S.D.Tex.1995), 895 F.Supp. 149, 152. That conclusion is supported by the interpretative guidelines issued by the Equal Employment Opportunity Commission, which state that conditions such as pregnancy are not the result of a physiological disorder and are not impairments. Id., citing 29 C.F.R. 1630.2(h). Furthermore, the ADA's express language defines a disability as a "physical or mental impairment that substantially limits one or more of the major life activities

of [an] individual." Section 12102(1)(A), Title 42, U.S.Code.[2] State appellate courts have reached the same conclusion, rejecting arguments that pregnancy-discrimination claims are cognizable under state laws forbidding disability discrimination. See, e.g., *Hegwine v. Longview Fibre Co., Inc.* (2007), 162 Wash.2d 340, 344, 172 P.3d 688 ("An employer who refuses to hire a job applicant because of her pregnancy is liable for sex discrimination * * *, not * * * accommodation analysis like that applicable to disability related employment discrimination claims").

{¶ 49} I agree. "The implicit reasoning in these decisions is persuasive and sound. Pregnancy is a physiological condition, but not a disorder." *Gudenkauf,* 922 F. Supp. at 473. Similarly, "[i]t is simply preposterous to contend a woman's body is functioning abnormally because she is lactating." *Bond v. Sterling, Inc.* (N.D.N.Y.1998), 997 F. Supp. 306, 311.

{¶ 50} To hold that a woman is "disabled" because she is pregnant or lactating evokes the paternalistic judicial attitudes toward working women that were apparent in early twentieth century cases. See, e.g., *Muller v. Oregon* (1908), 208 U.S. 412, 422, 28 S.Ct. 324, 52 L.Ed. 551. Where, as here, there is not a medical condition related to pregnancy that would satisfy the definition of disability, I would hold that pregnancy-related discrimination claims are not cognizable under the disability-discrimination provisions in the ADA.

MOYER, C.J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

---

2. We may look to federal regulations and case law for guidance in interpreting comparable Ohio law. "Although we are not bound to apply federal court interpretation of federal statutes to analogous Ohio statutes, we have looked to federal case law when considering claims of employment discrimination brought under the Ohio Revised Code." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 15. See also *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204.

{¶ 51} This is the Supreme Court, and when the opportunity arises, we should answer the questions that Ohioans need answered. In this case, we are asked whether mothers who breast-feed can be fired from their jobs for pumping their breasts in the workplace. That is, in its protection of pregnant workers in R.C. 4112.01(B), did the General Assembly include protection of women who are dealing with the aftereffects of their pregnancy? The lead opinion dodges the opportunity to provide an answer.

{¶ 52} Any court's method of analyzing cases should ask (1) whether the plaintiff stated a cognizable cause of action and (2) whether the facts of the case support the alleged cause of action. It is unclear why, on this question of great general interest, this court has embarked on a backwards analysis, letting stand the appellate court's holding that LaNisa Allen was fired for leaving her post without permission rather than for pumping her breasts in the employee washroom, thus leaving unanswered the question of whether she even asserted a cognizable cause of action. The trial court proceeded properly, although its conclusion was incorrect: it found as a matter of law that Ohio's pregnancy discrimination laws do not apply to protect mothers who breast-feed their babies. It did as it should in ruling on a summary judgment motion: it gave the benefit of the facts to Allen and ruled on the law.

{¶ 53} Somehow, the appellate court lost its way, and this court has followed. In its six-paragraph decision, the appellate court concludes that Allen was not fired for pumping her breasts: "Rather, she was simply and plainly terminated as an employee at will for taking an unauthorized, extra break (unlike the restroom breaks which were authorized and available to all of the employees, appellant included)." *Allen v. totes/Isotoner Corp.* (Apr. 7, 2008) Butler App. No. CA2007-08-196. The appellate court does not explain why Allen's trips to the restroom outside scheduled break times were different from the restroom trips other employees made outside scheduled break times. There is no evidence in the

18

record about any limit on the length of unscheduled restroom breaks and no evidence that employees had to seek permission from a supervisor to take an unscheduled restroom break. There is evidence only that unscheduled bathroom breaks were allowed and that LaNisa Allen was fired for taking them. What made her breaks different?

{¶ 54} We accept cases not necessarily because of how the result might affect the parties in the individual case, but because of how a holding might affect other persons similarly situated. Ohio's working mothers who endure the uncomfortable sacrifice of privacy that almost necessarily accompanies their attempt to remain on the job and nourish their children deserve to know whether Ohio's pregnancy-discrimination laws protect them.

{¶ 55} I would hold in this case that employment discrimination due to lactation is unlawful pursuant to R.C. 4112.01(B), that clear public policy justifies an exception to the employment-at-will doctrine for women fired for reasons relating to lactation, and that LaNisa Allen deserves the opportunity—due to the state of the record—to prove her claim before a jury.

_____

Repper, Pagan, Cook, Ltd. and John H. Forg III, for appellant.

Taft, Stettinius & Hollister, Timothy Reilly, and Daniel J. Hoying, for appellee.

_____